# Richmond

ROBERT DIEBRELL ELAM v. ANNE D. ELAM.

March 13, 1944.

Record No. 2725.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*W. L. Devany, Jr.*, for the appellant.

*Eastwood D. Herbert*, for the appellee.

HUDGINS, J., delivered the opinion of the court.

The dominant question presented in this appeal is whether the father, Robert D. Elam, or the mother, Anne D. Elam, shall have the custody of their six-year-old boy.

In January, 1940, Anne D. Elam obtained a decree granting her a divorce *a mensa* from her husband, Robert D. Elam, the custody of the child and $15 a week for maintenance and support of herself and child. The husband was given the privilege of having the custody of the child from Saturday morning until Sunday evening of each week and of seeing the child, if convenient, on Wednesdays between 5:00 and 7:00 p. m. This decree was modified on October 5, 1940, by reducing the amount of alimony and maintenance from $15 to $10 a week.

This was the status of the record on February 2, 1943, when Robert D. Elam filed a petition in the cause, alleging that Anne D. Elam, without having secured an absolute divorce, had entered into a bigamous marriage with Roy O. Goddard in New Jersey, which was convincing proof that she was not a fit and proper person to have the care and control of a child of tender years. The prayer of the peti-

tion was that the husband be granted a decree *a vinculo matrimonii* and the exclusive custody of the infant. The wife filed an answer, alleging that she had exercised proper care and control of the child since his birth; that she had worked and supported herself and the child since February, 1940; that her husband had failed to comply with the orders of the court and had never given her sufficient money to support and maintain the child; and that he was not a proper person to have the care and custody of an infant. She admitted that she had married Goddard in New Jersey, but stated that she thought the lapse of two and one-half years from the time the *a mensa* decree was entered gave her the right to remarry.

On these issues, the chancellor heard the evidence *ore tenus* and held that the parties were entitled to a decree *a vinculo matrimonii*, that the mother was entitled to the custody of the child and ordered the father to pay her $10 a week for support of herself and the child. The husband appealed.

There are three assignments of error which will be discussed in the order stated in the petition.

The first error assigned is "the granting to the complainant (Anne D. Elam) a divorce *a vinculo matrimonii* and refusing a divorce to the respondent (Robert D. Elam)." The decree from which this appeal was allowed granted both parties an absolute divorce. Under the circumstances hereinafter stated, we find this assignment of error is not well taken.

The second assignment of error is based upon that part of the decree which awarded the custody of the infant to the wife.

The welfare of the infant is the supreme and paramount consideration of the court in all controversies between parents over the custody of their offspring. In this case each parent alleged and introduced evidence tending to show that the other was not perfect and that the reputation of the other was much stained with human frailties, selfishness, evil tendencies and a misconception of legal and moral

obligations. Unfortunately, the uncontradicted evidence sustains, in part, both allegations.

The evidence introduced by the husband shows that on December 9, 1942, Anne D. Elam falsely stated to the authorities in the state of New Jersey that she was single. On this false representation she secured a marriage license, pursuant to which she married one Roy O. Goddard and thereafter lived in New Jersey with him as his wife.

A female detective, employed by Robert D. Elam, testified that she had seen Anne D. Elam return home late at night, sometimes accompanied by sailors and sometimes by civilians, frequently she staggered as if she were drunk, that on several occasions she saw men acompany Mrs. Elam to her room and there remain until the early morning hours. This testimony tends to show that Mrs. Elam was a lewd woman, and addicted to the use of intoxicating liquors. Suffice it here to say that the testimony of this detective was not corroborated in any particular and was contradicted by Mrs. Buchanan, the lady with whom Mrs. Elam boarded and whose testimony the chancellor accepted.

The false statement of Mrs. Elam as to her marital status, followed by a bigamous marriage and cohabitation, ordinarily would be sufficient to deny her the right to the custody of the child. However, the uncontradicted evidence shows that the husband was and is not a fit and proper person to have the care, training and custody of a six-year-old child.

Neither the wife nor the husband owned any property of substantial value. The husband was a skilled workman and in 1940 was earning $40 a week. Hence, he was well able to support and maintain his wife and child.

The original bill for divorce filed by the wife alleged that the husband was a man of violent temper, and that he was violent and abusive to her all during their married life.

Due to this cruel treatment she left him several times prior to 1939, but, on his promise to give her due and proper consideration, she returned and in good faith made several attempts to create a happy and comfortable home for him

and their child. His promises were not fulfilled. After the last reconciliation, his abuse grew in intensity. He struck her. She became fearful for the safety of herself and the child, and during the night left their home and sought refuge with a neighbor.

The husband filed an answer and cross-bill in which he denied the charges made against him and alleged that his wife had refused to live with him and had left him of her own accord and without cause.

On these issues, the learned chancellor heard evidence *ore tenus*, granted the prayer of the wife, gave her a divorce *a mensa*, and ordered the husband to pay $15 a week for maintenance and support. The evidence on the original bill and answer was not made a part of the record, but the chancellor remembered much of the evidence and hence was in a better position than we are to evaluate the evidence and decide the issues arising subsequent to the date of the decree and which are now before this court for determination.

The husband defied the decrees of the court. He refused to pay his wife anything for her support or for the support of the child, and, rather than comply with the order, preferred to remain in jail from February until October, 1940, leaving his wife and three-year-old child, so far as he was concerned, without shelter, food and raiment during that interval. Evidently his confinement in jail for eight months became irksome, as he filed a petition praying that he be purged of his contempt of court, and promising to pay a reasonable sum for the support of his wife and child. Upon this petition the court released him from jail and reduced the amount of compensation from $15 to $10 a week. Immediately thereafter the husband, instead of paying the $10 a week, persuaded the wife to reduce the amount to $5 a week. Thereafter this amount seems to have been still further reduced, as the husband testified he gave his wife $2 a week and bought the necessary clothing for his child—this, at a time when his earning capacity exceeded $175 a month.

The father took the child from its mother, not on Saturday morning in accordance with the decree but on Friday afternoon, and returned it to the mother, not on Sunday afternoon but on Monday. Finally, without a modification of the order of the court, he took the child from the mother and refused to return it, as he had promised and as the court had ordered him to do.

It is thus conclusively proven that neither the natural love and affection of this father for his child nor the solemn orders of the chancery court were sufficient to impel him to furnish his own child with sufficient food and clothing to keep it alive.

On the other hand, when the wife, for the safety of herself and child, was forced to leave her husband, her first thought was the proper care and protection of her child. She placed him in a nursery during the day while she was at work and, with the assistance of Mrs. Effie Buchanan, with whom she boarded, gave the child every care and consideration within her power and resources. Mrs. Buchanan stated that Mrs. Elam was a good mother and gave the child excellent care and attention. Mrs. Buchanan further stated that the mother conducted herself properly, otherwise Mrs. Buchanan would not have permitted her to remain in her home with the members of her family.

Mrs. Elam admitted that she had made a false statement in order to obtain a marriage license in another State, but testified that she thought the lapse of two and one-half years from the time the divorce *a mensa* was granted entitled her to be legally married beyond the borders of Virginia. She was unyielding in her opinion that her second marriage was valid notwithstanding the laws of this Commonwealth. She evidently misconceived the moral and legal obligation she owed to society. Her conduct, based on this misconception, may subject her to punishment, but this fact has not deterred her from giving to the child loving care and attention.

The late lamented and learned chancellor, confronted with uncontradicted evidence convicting both the mother and the father of violating legal and moral obligations im-

posed upon them by organized society, was compelled to select one of three custodians for the child. The chancellor could have granted the prayer of either parent, or he could have refused the prayers of both parents and placed the child in the custody of the State Welfare Board. However, in the exercise of the sound discretion with which the statute clothes him, he decided that the welfare of the child required that his care and training be entrusted to the wife and the mother, notwithstanding the fact that she had misconceived her duty to secure an absolute divorce before attempting to contract marriage with another person. The suit is still pending on the docket. The order awarding custody may be changed to meet the exigencies of the situations which hereafter may be brought to the attention of the court. Viewing the case as a whole, this court cannot say, as a matter of law, that the chancellor, in reaching his conclusion, has abused the discretion reposed in him.

The third assignment of error is to the action of the court in awarding the wife $10 a week "for support and maintenance of herself and child."

On the facts stated, we do not think the wife is entitled to any alimony, but the father is still under obligation to support the child and, from all the evidence, his earning capacity shows that he is well able to pay the small sum of $10 a week for this purpose. The decree should be modified to the extent that Elam should be ordered to pay to the wife this sum for the support and maintenance of the child.

As modified, the decree will be affirmed.

*Modified and affirmed.*