## Staunton

J. A. LAWSON AND REBECCA LAWSON v. EDNA HANCOCK LAWSON.

September 4, 1956.

Record No. 4575.

Present, All the Justices.

The opinion states the case.

*David Nelson Sutton* (*John Paul Causey, Sutton & Causey,* on brief), for the appellants.

*Beverley H. Randolph, Jr. (V. C. Adamson,* on brief), for the appellee.

SPRATLEY, J., delivered the opinion of the court.

The sole issue in this case involves the custody of two infants, Linda Ann Lawson, ten years of age, and Patricia, nine years, the daughters of Levi Owen Lawson and Edna Hancock Lawson. Levi Owen Lawson having died during the pendency of this appeal, the controversy is between the mother of the children on the one side and the uncle of the children, J. A. Lawson and his wife, Rebecca Lawson, on the other.

On August 3, 1951, Edna Hancock Lawson instituted a suit for divorce against her husband, Levi Owen Lawson, in the Law and Equity Court of the City of Richmond. In her bill she alleged that her husband had refused to contribute money for the support of herself and children, had assaulted her, and that she was in constant fear of her life from him. She prayed that she be granted a divorce from bed and board on the ground of cruelty and reasonable apprehension of bodily hurt; that she be awarded the custody of their two infant children; and that her husband be required to furnish such amounts as might be reasonable, necessary and proper for the maintenance of herself, and the children then in her custody.

Levi Owen Lawson answered, denying the material allegations of the bill, and praying that he be given the custody of the children, "to be kept in the home of his brothers and sisters."

On August 1, 1955, Edna Hancock Lawson filed a petition in the divorce suit, setting out that her two children were then temporarily living in the home of the defendant's brother, J. A. Lawson and the latter's wife, Rebecca Lawson, in Gloucester County, Virginia, where they had gone during petitioner's illness. She stated that she had recovered her health, had established a home; but that J. A. and Rebecca Lawson refused to deliver the children to her without an order of court to do so. She prayed that such an order be entered. Thereupon the court directed J. A. and Rebecca Lawson to appear and show cause why an order should not be entered granting the sole custody of the children to their mother.

J. A. and Rebecca Lawson filed their answer, setting out that the children had come to live with them on several different occasions; that both the father and mother, as well as the children, had had

tuberculosis; that the children had lived with them continuously since August 1, 1953, and had attended school in Gloucester County two full sessions, where they were making good progress in their school work; that the children were happy and well adjusted; that the father was desirous of having the children cared for by the respondents; and that it would be to the best interest of the two children to continue to live in their home.

While a hearing on the petition for the custody of the children was pending, Edna Hancock Lawson went to the school in Gloucester County which her children attended, took the children from the school, and carried them to her home in Richmond. J. A. and Rebecca Lawson immediately filed a petition, setting out the above fact, and the court entered an order directing that the children be returned to the custody of J. A. and Rebecca Lawson until further order.

The trial court with the above proceedings before it, and with the evidence heard *ore tenus*, after consideration thereof, on November 4, 1955, entered the following decree:

"It appearing to the Court that there was born of the marriage of Edna Hancock Lawson and Levi Owen Lawson two children, Linda Ann Lawson born on June 23, 1945, and Patricia Lawson born on July 26, 1946; that the father of said children, Levi Owen Lawson, contracted tuberculosis in the year 1947 and is presently a patient at the Veterans Administration Hospital (McGuire's) at Richmond, Virginia; that in the year 1953 Edna Hancock Lawson contracted tuberculosis and was a patient at Pine Camp Hospital, Richmond, Virginia; that in the late summer of the year 1953, the aforesaid children, Linda Ann and Patricia, were placed by consent of both the father and mother in the home of J. A. Lawson, brother of Levi Owen Lawson, and Rebecca Lawson, wife of J. A. Lawson, in Gloucester County, where the children are presently living; that Edna Hancock Lawson has recovered from tuberculosis, is now gainfully employed, capable of furnishing a home for her children, is a fit and proper person to care for her children and that the welfare of the children will be promoted by being in the custody of their mother.

"UPON CONSIDERATION WHEREOF, the Court doth Adjudge, Order and Decree that J. A. Lawson and Rebecca Lawson forthwith return the two children, Linda Ann Lawson and Patricia Lawson, to the custody of their mother, Edna Hancock Lawson, who shall retain

the custody of the two said children until the further order of this Court."

Upon petition of Levi Owen Lawson, J. A. Lawson and Rebecca Lawson, we granted this appeal on February 29, 1956. On June 11, 1956, it appearing to this Court that Levi Owen Lawson had died on May 14, 1956, he was dismissed as a party to the cause.

J. A. Lawson and Rebecca Lawson contend that the evidence showed that the best interests of the children required that they be given the custody of the infants, and that, in determining that question, the court erred in failing to take into consideration the wishes of the children and their father that their custody be given to their uncle and his wife.

The facts are without material dispute.

Levi Owen Lawson, the father of the infants, had, since 1947, been a patient in a United States Veterans' Hospital for the treatment of tuberculosis, and at the time of the trial of the case in the lower court was still in such a hospital. He was apparently a permanent invalid, and as such not a physically fit person capable of having the custody and care of his infant children. His wife, Edna Hancock Lawson, became ill in 1948, and subsequently developed tuberculosis; but according to the medical evidence she is now cured. Both of the infant children developed the same disease; but are also apparently cured, only scars remaining from their former illness.

In 1954, Edna Hancock Lawson learned that her husband, while a patient in a Veterans' Hospital in North Carolina, had obtained a decree of divorce from her in a court in that State, without notice to or appearance by her. She applied for and was granted an appeal, and the Supreme Court of North Carolina set aside and annulled the decree. In the meanwhile, the divorce proceeding instituted by Mrs. Lawson in the Law and Equity Court of the City of Richmond was awaiting trial. The trial had not been concluded at the time of the death of her husband.

Mrs. Edna Hancock Lawson, thirty years of age, testified that when she became ill in 1948, the children, with her consent, spent three months with their uncle, J. A. Lawson, and his wife, in Gloucester County. In the fall of 1953, Mrs. Edna Hancock Lawson had pleurisy, her condition was such that she had to be hospitalized, and the children were again sent to the home of their uncle in Gloucester County, where they remained until the institution of the proceeding to determine their custody.

It appears that J. A. Lawson and his wife have a good home in the country, conveniently located to a school and church; that the children have been well taken care of, and have become happy and contented; and that Mr. and Mrs. J. A. Lawson have become greatly attached to them. It further appears that Mr. and Mrs. J. A. Lawson received $55 monthly from the Veterans' Administration, plus a contribution from their father for the support of the children. J. A. Lawson had been married once before to Essie G. Lawson, by whom he had five children. Mrs. Essie G. Lawson obtained a divorce from him and the custody of the five children. The father failed to comply with the order of the court to pay her $10 per week toward the support and maintenance of his children, all of whom are now more than twenty-one years of age, save one daughter, who remains with her mother. Mrs. Rebecca Lawson had been previously married and divorced.

The uncontradicted evidence shows that the mother of the children, Edna Hancock Lawson, is an intelligent and capable woman. She is a valued employee in the office of the Commissioner of Accounts of the Chancery Court of the City of Richmond, Virginia. Witnesses testified that she is a reputable, respectable, Christian woman, and capable of providing a home for her children under very good surroundings. She receives a salary of $220 a month, working an eight-hour day, Monday through Friday. She also received an allotment from the Veterans' Administration for support of the children prior to the time they were sent to Gloucester County in 1953.

Mrs. Edna Hancock Lawson lives in the home of her parents, in the City of Richmond, Virginia, where there is ample room and furnishings for herself and her two children. Numerous witnesses declared her to be a loving and devoted mother, and a fit and proper person to have the custody of her daughters. No one testified to the contrary.

It is not denied that J. A. and Rebecca Lawson took good care of the children during their stay in Gloucester County. It is evident that a strong affection has developed between the children and their uncle and his wife. For this, Mr. and Mrs. J. A. Lawson are to be commended.

In their evidence, appellants emphasized their fitness to have the custody of the children. Only a weak attempt was made by either of the parties to discredit the other, and that was only by inuendo or

covert suggestions of impropriety, and it will not serve any good purpose to repeat such evidence here.

We have repeatedly said that in awarding the custody of a child the trial court has a wide measure of discretion, in the exercise of which the paramount and controlling consideration is the welfare of the child. *Merritt* v. *Swimley*, 82 Va. 433, 3 Am. St. Rep. 115; *Wyatt* v. *Gleason*, 117 Va. 196, 83 S. E. 1069; *Fleshood* v. *Fleshood*, 144 Va. 767, 130 S. E. 648; *Surber* v. *Bridges*, 159 Va. 329, 165 S. E. 508; *Elam* v. *Elam*, 182 Va. 469, 29 S. E. 2d 222; *Sutton* v. *Menges*, 186 Va. 805, 44 S. E. 2d 414; *Davis* v. *Davis*, 187 Va. 63, 45 S. E. 2d 918; *Mullen* v. *Mullen*, 188 Va. 259, 49 S. E. 2d 349; *Williams* v. *Williams*, 192 Va. 787, 66 S. E. 2d 500; *Hepler* v. *Hepler*, 195 Va. 611, 79 S. E. 2d 652; *Judd* v. *Van Horn*, 195 Va. 988, 81 S. E. 2d 432; 14 M. J., Parent and Child, § 8, page 92, and numerous cases there cited. Cf. Virginia Code, 1950, § 31-15.

The rule, however, is not unqualified in that the rights of the parent, being founded on nature and wisdom, are also to be considered and regarded, unless they have been abandoned. *Fleshood* v. *Fleshood, supra; Surber* v. *Bridges, supra.*

There is a strong presumption that the best interests and welfare of the child will be best subserved by placing it in the custody of its natural parents, or of the surviving parent, and that the showing of such relationship in the absence of anything more makes out a *prima facie* case for the parents, and the burden of showing existence of circumstances which would deprive the parents of the right to custody is on the person opposing the parents' right. *Judd* v. *Van Horn, supra,* 195 Va. page 996; 67 C. J. S., Parent and Child, § 13 f (1) page 673; 39 Am. Jur., Parent and Child, § 24, page 613, *et seq.*

"To separate a child from its parents the evidence must be cogent and convincing. *Sutton* v. *Menges, supra.*" *Williams* v. *Williams, supra,* 192 Va. page 787.

This case is, in many material respects, similar to and, in our opinion, controlled by *Sutton* v. *Menges, supra,* and *Williams* v. *Williams, supra.* In those two cases, all questions of fact were submitted to the court and all conflicts resolved in favor of the parents. That is the situation here, where we have the judgment of a court, based on testimony heard *ore tenus* and supported by ample evidence.

The evidence shows that the separation of Mrs. Lawson from her children was due to circumstances of health and not to her fault. She has now been restored to health and the evidence is to the effect that

there is no reasonable chance of the communication of her former disease to any one else. She has been shown to be a woman of good character and intelligence, and has established her ability to maintain a home and adequately support and rear her children for that station of life they may be expected to fill. It is true that the uncle and his wife are fond of the children; but that cannot take the place of a mother's love, devotion, attention and supervision, nor deprive the mother of her natural right to have and enjoy the companionship and care of her own flesh and blood, in the absence of a clear showing that a separation from her would be to the best interest of the children.

[■ We find no merit in the second contention that the court erred in failing to take into consideration the wishes of the children in determining their custody.

Counsel for appellants first moved the court to call the infants as its witnesses. This the court refused. The court then stated that in its experience it had never found any value in the testimony of children in cases of this character, which would offset the damage to them in such a controversy. The appellants were, however, given the opportunity to present the children as their witnesses, provided they could qualify as to their understanding of the nature of the oath. No attempt was made to qualify, or to present, them as witnesses. While appellants contend that the attitude of the Judge deterred the offering of the children as witnesses, no objection was made nor any exception taken with reference thereto.

Appellants rely upon the cases of *Hutchison* v. *Harrison*, 130 Va. 302, 107 S. E. 742, and *Hepler* v. *Hepler, supra,* wherein are reviewed many of the cases dealing with the question of the consideration to be given the wishes of children regarding their custody. The facts and circumstances in the instant case do not bring it within the influence of those two cases.

In *Hutchison* v. *Harrison, supra,* a nervous, sensitive girl, thirteen years of age, had been residing for sometime with her grandparents in Virginia. It appeared from the evidence that her health was poor when she stayed with her parents in Tennessee; but was greatly improved when she resided with her maternal grandparents in Virginia. Upon the hearing of a *habeas corpus* proceeding, instituted by her father, involving her custody, the child testified to a strong desire to remain with her grandparents. It appeared that the prospect of being taken from them affected her prejudicially. The trial court, notwithstanding her circumstances, condition and wishes, awarded

her custody to her father. Upon appeal we reversed and remanded, with direction that the wishes of the child be considered, and that she be given the option to elect whether she would go to her parents or remain with her grandparents, subject to the supervision of the trial court.

In *Hepler* v. *Hepler, supra,* the trial court refused to permit a boy, twelve years of age, who was shown to be unusually bright and intelligent, to testify as to whom he desired that his custody be given. In connection therewith, Chief Justice Hudgins said:

"The competency of a child as a witness to a great extent rests in the sound discretion of the trial judge, whose decision will not be disturbed unless the error is manifest. It is the duty of the trial judge to determine such competency after a careful examination of the children. In deciding the question the judge must consider the child's age, his intelligence, or lack of intelligence, and his sense of moral and legal responsibility. * * *."

We have long followed the rule that in controversies relating to the custody and control of children, the wishes of the child, if it is of the age of discretion, should be considered. The law prescribes no age at which it is presumed to have discretion adequate for such purpose, and no fixed rule can be laid down by which such fitness can be determined. Each case must be decided on the particular facts involved, looking to the capacity, information, intelligence, and judgment of the child. 14 M. J., Parent and Child, § 9, page 93, *et seq.,* and cases cited.

The desires of the Lawson children were presented only by hearsay evidence. As we have said, there was no attempt to qualify them as witnesses, nor any direct evidence of their personal and independent wishes, unaffected by favor, persuasion, or coercion.

It appears that the trial court gave due consideration to all of the evidence before it. Its conclusion that the mother was a fit and proper person to have the custody and control of the children is sustained by both the weight of the evidence and the rule of law which gives weight to the judgment.

Accordingly, the decree complained of is affirmed.

*Affirmed.*