## Richmond

JEAN A. JONES v. MARY ELIZABETH GAYLE JONES HENSON.

June 12, 1961.

Record No. 5235.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, l'Anson and Carrico, JJ.

The opinion states the case.

*Vance M. Fry* and *S. Page Higginbotham* (*Higginbotham & Fry*, on brief), for the appellant.

*J. L. Fray* and *Harold H. Purcell* (*Fray & Hudson*, on brief), for the appellee.

SPRATLEY, J., delivered the opinion of the court.

This appeal presents a question which has troubled the courts for many years. We are called upon to determine a controversy over the custody of a child, a boy now between 11 and 12 years of age, between the appellant, the widow of his deceased father, and the appellee, his mother. The trial court, after hearing the evidence *ore tenus,* awarded the custody of the child to his mother. His stepmother, Jean A. Jones, asks us to reverse the award and determine that she is entitled to such custody.

In order to understand the situation, it is necessary to recite somewhat in detail the evidence and the background of the controversy. There are few, if any, material conflicts.

Reginald Lamont Jones, Jr. married Mary Elizabeth Gayle Jones, now Mrs. Henson, on April 23, 1949. At the time of their marriage, Reginald was 18 years of age, and the then Mary Elizabeth Gayle Jones was 15 years of age. On November 28, 1949, the child involved in this proceeding, Gilbert Warren Jones, hereinafter referred to as Gilbert, was born to them.

On September 26, 1951, Reginald and his wife, living separate and apart, entered into a written agreement between themselves and Mrs. W. H. Jacobs, in which it was agreed, "that at present the said child (Gilbert) shall remain in the custody, care and control of the said Mrs. W. H. Jacobs, * * * with Reginald L. Jones, Jr., party of the first part, providing maintenance and support for said child; * * *." The agreement further provided that Mrs. Jacobs would "not at any time in the future assert any right or claim to the custody of the child by virtue of the agreement, or by virtue of her possession of the said child under this agreement;" and that she would at any time deliver the possession of the child to the mother and father, or to whom they might direct.

On October 11, Reginald Jones instituted suit against his wife for a divorce *a mensa et thoro* upon the grounds of constructive desertion. He prayed that the custody of the child be awarded to him. Mrs. Jones answered, alleged that each parent was a fit and proper person to have the custody of him, and asked that the court recognize the rights and interests of each therein. The case was

duly matured, and the evidence heard *ore tenus*. By decree of December 5, 1951, it was adjudged and decreed that their son be left temporarily in the custody of Mrs. Jacobs, in accordance with the terms of the agreement between his parents and Mrs. Jacobs, dated September 26, 1951.

On March 31, 1952, the cause came on to be heard upon additional evidence introduced in open court, upon consideration of which, the court entered a decree reciting that the complainant and defendant had voluntarily separated pursuant to the separation agreement; that the defendant was not guilty of constructive desertion; and that neither the complainant nor the defendant was entitled to the custody of the child "at this time." The decree then denied the complainant a divorce; denied his prayer for the custody of the child; dismissed the bill of complainant; and ordered that the child remain in the custody of Mrs. Jacobs. It then modified the agreement of September 26, 1951, "to the extent that either the complainant or the defendant may, at reasonable times, take the child out of the home of Mrs. Jacobs for short periods of time in the daytime, conditioned upon first obtaining the consent and approval of Mrs. Jacobs on each occasion; but in no case is the child to be taken or retained from the home of Mrs. Jacobs at night." The cause was retained on the docket, with leave reserved to the parties to make application for further relief.

On May 7, 1952, upon motion of Reginald Jones, the court vacated and set aside so much of the decree of March 31, 1952, as related to the matter of divorce, and granted leave to the parties to present additional evidence relating to that subject, and in all other respects affirmed the provisions of the March decree.

On June 5, 1952, the divorce cause came on again to be heard upon the evidence formerly presented and upon additional evidence presented in open court in the presence of the parties. On that day, the court entered a decree finding that the defendant had deserted and abandoned Reginald Jones, and adjudged that Jones be granted a divorce *a mensa et thoro*. It was ordered that Gilbert, the infant child, be placed in the care and custody of Mrs. Jacobs, pursuant to the agreement of September 26, 1951, subject to the modification recited in the decree of March 31, 1952, with a further recitation that: "The divorce herein granted to the complainant, Reginald Lamont Jones, shall in no way militate against the interests of the defendant as to the custody of the said child."

On September 29, 1952, by order of the trial court, the decree for divorce *a mensa et thoro* granted Reginald Jones was merged into a divorce from the bonds of matrimony. The cause was ordered to be stricken from the docket, "with leave to be reinstated for such orders as may be necessary as to the custody, maintenance and support of the infant child born of the parties hereto."

All of the foregoing proceedings were heard before the late Burnett Miller, Jr., Judge of the Circuit Court of Orange County.

Reginald Jones filed a petition in the above cause, on November 5, 1954, alleging that he had remarried; that his divorced wife had also remarried; and prayed for the custody of his infant son. The petition came on to be heard on November 30, 1954, before Judge C. Champion Bowles, successor to Judge Miller, in the presence of Reginald Jones, Mary Elizabeth Gayle Jones Henson, then 21 years of age, Mrs. Jacobs, and their counsel. After hearing the evidence *ore tenus*, it was decreed that the custody of the child be given to Jones; but that the transfer of custody from Mrs. Jacobs should not take place until Jones "has obtained a suitable home of his own, and until the said Reginald Lamont Jones, Jr. shall demonstrate to the court his ability to provide religious training for said child." The cause was continued to January 24, 1955, and Jones was given permission to present evidence at that time showing his compliance with the order of the court. The decree then recited: "It is the further order of this Court that the matter of the right of Mary Elizabeth Gayle Jones Henson to the custody of said child has not been adjudicated in this proceeding, and this decree shall in no way prejudice her right to present her claim for custody of said child."

On January 26, 1955, the court being of opinion that the complainant had complied with the decree of November 30, 1954, awarded the custody of the child to his father, "there to remain until further order of this Court." The decree further ordered that Mrs. Henson, "shall have the right to see and visit the said child at any and all reasonable times, and shall have the right to have said child with her at any and all reasonable times, provided, however, that the child shall not at any time be taken beyond the borders of the State of Virginia."

Reginald Lamont Jones, Jr. was killed in an automobile accident on May 14, 1960. On May 23, 1960, Jean A. Jones filed a petition alleging that Gilbert had been removed by his grandmother, Elizabeth Jones Baxter, mother of Reginald Jones, to the latter's home in

Fredericksburg, that Mrs. Baxter had refused to return him to petitioner's home, and praying that the custody of the child be awarded to her. One week later Mrs. Baxter filed a petition asking that she be awarded such custody. On June 2, 1960, an order was entered placing the custody of the child temporarily with Mrs. Jones until July 1, 1960, and providing, "that the question of the permanent custody of the child is not now adjudicated; but is set down for hearing on July 1, 1960."

On July 1, 1960, Mrs. Henson, the mother of the child, appeared, and by consent of all parties, filed her petition asking that custody of the child be granted to her. Thereupon, the case came on to be heard upon the several petitions, and the evidence presented in open court.

Witnesses on behalf of Mrs. Jones testified that she was a woman of good reputation, and a fit and proper person to have the custody of the child; that she and her late husband lived near Orange, Virginia, in a trailer unit, in the yard of her parents' home; that she is 27 years of age and the mother of a nineteen-months old son; that she had been a good mother to Gilbert, provided well for his needs, physically, educationally and spiritually; and that she was as devoted to him as if he were her own child.

Gilbert testified that he loved Mrs. Jones and his half-brother, and would like to stay with them and attend school in Orange; and that he had, for several years, been spending his summer vacations with his grandmother, Mrs. Baxter, near Fredericksburg, Virginia, and would like to continue doing so. He said he did not remember his mother when he saw her.

Mrs. Baxter was given a good reputation by a number of witnesses, who said that she was a fit and proper person to have the custody of her grandchild. She has a good home, has sufficient financial resources to care for and educate the child. She testified that she loves the child, and that her husband would be pleased to take him in their home and train him as a son. She also said that Reginald Jones had told her that if anything happened to him, she was to immediately bring Gilbert to her home.

The good character of Mary Henson, and of Donald Henson, whom she married on December 24, 1953, was vouched for by a large number of witnesses, who live near them at their present home in Alexandria, and by others who knew them when they lived in Culpeper. They said that she was a fit and proper person to have

the custody of her child. The Hensons have no children. Henson is a permanent employee earning $100.00 per week, in addition to some income from his farming efforts. Mrs. Henson has been employed as a waitress in a restaurant; but has given up that work in order to devote her entire time to the care of Gilbert. Henson said that he would be pleased to take Gilbert into his home; that since the death of the boy's father, he and Mrs. Henson had endeavored to visit the child a number of times; but visitation had been denied them except upon one occasion, that is, when he took Gilbert to Orange and bought him some small presents. Mrs. Henson said that she is now in a position to acquire an apartment sufficiently large to comfortably accommodate her family, including Gilbert; and that the apartment is in a good neighborhood, near a school, and a church which she attended when she was not at work. She testified that she and her husband visited the child nearly every week-end while he was in the custody of Mrs. Jacobs; that she bought him clothes; took him "things;" and carried him to a picnic; but that after Reginald Jones married Jean A. Jones, they made it clear that they felt unkindly towards her and would not welcome her in their home. She also said that she and her husband went from Alexandria to Orange twice to see the boy; but were refused the right to do so on the ground that he was away from home or was sick. Her statements of such refusals were not contradicted.

There were some statements and charges in the evidence which alleged immoral conduct on the part of Mrs. Henson shortly prior to the time Reginald Jones divorced her. These allegations she denied. It will serve no good purpose to set them out, since the chancellor who heard the divorce proceeding manifestly gave them little consideration, and the second chancellor, who saw and heard all the witnesses testify in the proceedings for the custody of the child, found, as a matter of fact, that all three of the petitioners were, at that time, fit and proper persons to have the custody of him.

On July 13, 1960, the chancellor filed a written memorandum of opinion, setting out the former proceedings, a summary of the evidence, and his conclusion that neither Mrs. Jones nor Mrs. Baxter had shown that either of them was entitled to the custody of the boy. He further found that Mrs. Jones did not stand *in loco parentis* to the child, and that there was no evidence of a voluntary abandonment or relinquishment of the child's custody by his mother.

On July 25, Mrs. Jones, after being advised of the chancellor's

opinion, filed a motion and a petition to rehear the question of the custody of the child.

On August 5, 1960, a decree was entered denying the motion and petition of Mrs. Jones, and awarding the permanent custody of Gilbert to Mrs. Henson, the appellee.

Mrs. Jones thereafter perfected this appeal; but Mrs. Baxter did not make any further objection to the award of the boy to his mother.

In her assignments of error, Jean A. Jones contends that the court erred in finding that Mrs. Henson had not abandoned and relinquished her rights to her son; in holding Mrs. Jones did not stand *in loco parentis* to the child; and in awarding the child to Mrs. Henson.

No inflexible rule can be laid down by which the fitness of one to have the custody of a child may be determined. Each case must be decided on its particular facts. The general principles, however, which govern the awarding of such custody are well established.

Here, we have the judgment of a court based upon testimony wholly heard *ore tenus*. Such conflicts as appeared in the evidence were resolved in favor of Mrs. Henson by a chancellor, who saw and heard the witnesses testify. His finding upon the credibility of the witnesses and the weight to be given their testimony stands upon the same basis as the verdict of a jury. It is presumed to be correct, and the burden is upon him who assails it to show that it is wrong. *Sutton* v. *Menges*, 186 Va. 805, 44 S. E. 2d 414; *Williams* v. *Williams*, 192 Va. 787, 791, 66 S. E. 2d 500; *Lawson* v. *Lawson*, 198 Va. 403, 94 S. E. 2d 215; *Phillips* v. *Kiraly*, 200 Va. 345, 350, 105 S. E. 2d 855.

The welfare of a child is the paramount and controlling consideration in determining who shall have its custody. It is strongly presumed that its best interests will be served by placing it in the custody of its natural parents or surviving parent, unless such parents are unfit or unsuitable. "In Virginia, the parents of unmarried minor children are, by the provisions of Virginia Code, 1950, § 31-1, declared to be their natural guardians, '* * * and upon the death of either parent the survivor shall be the natural guardian of the person of such child. * * *.' The burden of showing existence of circumstances which would deprive the parents of the right to custody is on the person opposing the right, and the evidence justifying the separation of a child from its parents must be cogent and convincing." *Phillips* v. *Kiraly, supra,* 200 Va. at page 351; *Lawson* v. *Lawson, supra,* 198 Va. at page 408; *Judd* v. *Van Horn,* 195 Va. 988, 995, 996, 81 S. E. 2d 432; *Sutton* v. *Menges, supra,* 186 Va. at page 810; 67 C. J. S.,

Parent and Child, § 13 f (1) page 673; 39 Am. Jur., Parent and Child, § 24, page 613, *et seq*; 14 Michie Jur., Parent and Child, § 7, page 91.

The wishes of a child, if it is of the age of discretion, should be given consideration; but they are not conclusive. *Sutton* v. *Menges, supra,* 186 Va. at page 812; *Lawson* v. *Lawson, supra,* 198 Va. at page 410. Here the child's desire to remain with Mrs. Jones was his natural reaction to his residency in her home and his personal relations with her.

Appellant relies upon a number of cases, the facts or circumstances in each of which differ from those here. In some of them there was a voluntary relinquishment or abandonment by a parent of his right to custody, a prolonged period of actual residence by the child with another custodian, or the parent was shown to be an unsuitable person to have the custody.

It is fully apparent from the record that each of the chancellors who presided in these proceedings from the beginning to end was fully alert to the rights of the parties and cognizant of the principles of law and equity applicable to the facts presented. It also appears that the chancellor who entered the decree appealed from gave consideration to all of the evidence and the circumstances of the case. He realized that whatever his conclusion, there would be sorrow and heartache for someone. He realized that it would be naturally upsetting to remove the child from the home in which he had resided from the time custody was awarded to his father. He realized that there is no tie so strong as that which a normal mother feels for her own child. He was nearer the scene and in a much better position to arrive at a proper conclusion than one removed therefrom.

There was sufficient evidence to show that Mrs. Henson, at no time, voluntarily abandoned or relinquished her claim to her child. In fact, the record shows that she sought and obtained a recognition of such claim. There is ample evidence to support her claim that she is a fit and proper person to have his custody, control and training. It is also worthy of note that the child in his new surroundings will have the benefit of a boy living in a home with his mother and her husband.

The facts justified the holding of the chancellor that Jean A. Jones did not stand *in loco parentis* to the child, since it was clear that she cared for the child as the wife of his father, who had custody of him.

The burden of proving facts and circumstances, which would de-

prive Mrs. Henson, the natural mother, of the right to custody of her son was on the appellant. The additional matters sought to be put in evidence upon a rehearing had been presented in former proceedings in the divorce case, had been then considered and acted upon by the trial court, and some of its was merely cumulative testimony upon matters theretofore fully heard in the custody proceeding.

We are of opinion that the learned chancellor was amply supported in his finding of facts; that he did not abuse his discretion in denying the petition to rehear his holdings; and did not err in his application of the law. The decree appealed from is affirmed.

*Affirmed.*