# Richmond

ALMOND F. FORBES v. JOYCE S. HANEY, ET AL.

December 2, 1963.

Record No. 5663.

Present, Spratley, Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*F. Lee Ford* (*Ford & Avis*, on brief), for the appellant.

*Bert A. Nachman*, for appellees, James E. Sutton and Geraldine Sutton.

WHITTLE, J., delivered the opinion of the court.

This is an appeal by Almond F. Forbes from a decree of the corporation court of the City of Newport News entered on November 1, 1962, awarding custody of Julia Ann Forbes, also known as Julia Ann Haney, to James E. Sutton and Geraldine Sutton, maternal grandparents of the infant.

On August 9, 1962, Forbes filed a petition in the trial court praying

for an injunction seeking to restrain Mrs. Haney, the mother of Julia Ann Forbes and Brenda Joyce Haney, from removing said infant children from the jurisdiction of the court. In the petition Forbes sought the custody of both children. Mrs. Shirley Clowers, sister of Mrs. Haney, who was then in actual custody of the children, and Mrs. Haney were named parties defendant. Service was had upon Mrs. Clowers, but no service was had upon Mrs. Haney because of her absence from the city.

At a hearing on the petition on August 10, 1962, the court entered a decree enjoining Mrs. Haney and Mrs. Clowers from removing the children from the jurisdiction of the court and granted the custody of the children to Forbes.

On September 17, 1962 Mrs. Haney filed notice that she would seek the custody of the children. A hearing was had on the notice on September 28, 1962. At the time Forbes claimed to be the father of Julia Ann and it was conceded that Brenda was the daughter of Warren Haney and his wife, Joyce Sutton Haney. The court held that the mother of the children was unfit to have the custody of either child; that the custody of Julia Ann was to remain with her father and a hearing was set for October 2, 1962 to determine what should be done concerning the custody of Brenda.

On October 2, 1962 James E. Sutton and Geraldine Sutton, maternal grandparents of both infants, appeared with their attorney and requested the trial court to award custody of both children to them. The intervening of the Suttons was objected to by counsel for Forbes.

On October 5, 1962 counsel for Forbes addressed a petition to the judge in which he contended that the hearing on October 2 was invalid for lack of notice. The petition prayed that a rehearing be had. The court granted a rehearing in accord with the prayer of the petition, which rehearing was had on October 17 and October 24, 1962. At the conclusion of this ore tenus hearing the court on November 1, 1962 entered the decree here complained of which awarded custody of the infant children to the intervenors, James E. Sutton and Geraldine Sutton, and provided for support, visitation rights, etc.

In this decree the court declared that Julia Ann Forbes, 10 years of age, was the child of Joyce Haney and Almond F. Forbes, the complainant. There are several assignments of error relied upon by Forbes which resolve themselves into one question, i.e., considering

the record and the wide discretion granted the trial judge in a custody proceeding did the trial court err in awarding custody of Julia Ann Forbes to her maternal grandparents in the light of her father's unfitness.

The record discloses that in 1951 Forbes and Joyce S. Haney began living together although at the time both were married to their respective spouses. This illicit relationship was to last for a period of ten years. The evidence was conflicting as to who was the father of Julia Ann. Mrs. Haney at first stated that Forbes was the father of the child, but later testified that when she was in Florida where she had gone to seek a divorce from her husband, Warren Haney, she had illicit relations with another man and that he could be the father of Julia Ann.

Julia Ann's birth certificate states that the father of the child was Mrs. Haney's former husband, Warren Haney. Therefore, as to who was the father, the court had three possibilities: Warren Haney, the unknown and unnamed man in Florida, and Almond F. Forbes. From the evidence the court decreed Forbes to be the father.

It is disclosed that in October 1952, four months after the birth of Julia Ann on July 13, 1952, Forbes and Mrs. Haney went through a marriage ceremony which was later annulled because Forbes was not divorced from his second wife at that time. Later the second wife of Forbes obtained her divorce in Ohio from him on the ground of adultery and Mrs. Haney was named and proved to be the co-respondent.

The record further discloses that Forbes lived in Ohio for a while and while there he obtained an annulment of his unlawful marriage to Mrs. Haney. After the annulment Forbes came back to Virginia and resumed living with Mrs. Haney, representing himself to be her husband. They continued to live together in this relationship from 1952 until January 1962 when they separated on account of the fact that Mrs. Haney had found another lover, one Johnnie Thomas, a married man.

While Mrs. Haney and Forbes were living together they purchased real estate, representing themselves to be husband and wife, and deceived the mortgage companies in obtaining loans on the property. This misrepresentation continued until the last home was purchased where title was recorded in the name of Forbes and his alleged wife as tenants by the entirety with the right of survivorship.

The maternal grandparents testified that they loved both of the

children and that the children had lived with them for weeks at a time prior to this litigation. The trial court examined the children separately and at first privately and reported to the parties that the children had expressed a preference to live with their maternal grandparents. Later both children testified in open court to the same effect after being subjected to cross-examination. It was evident that Julia Ann loved her grandparents and above all things she did not want to be separated from her sister Brenda.

The evidence on behalf of Forbes was that if the child Julia Ann were given to him, her home would be with Forbes' mother and a maiden sister with whom Forbes lived. From this evidence the trial court ascertained that the best interests of the infant would be served by placing her with the maternal grandparents and that the preference of the child, while not binding upon the court, should be given careful consideration; that the Suttons would be with the child during the day and night and that they would see that she and Brenda received proper care and attention. The court also found that the conduct of Forbes disqualified him as the custodian of the child.

The judgment of the trial court is presumed to be correct and the burden is on him who assails it to show that it is wrong. *Phillips* v. *Kiraly*, 200 Va. 345, 350, 105 S. E. 2d 855, 859; *Oliver* v. *Oliver*, 193 Va. 571, 576, 69 S. E. 2d 350, 353.

The conclusion of the chancellor based upon evidence heard ore tenus is entitled to great weight and will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. *Florance* v. *Florance*, 197 Va. 432, 435, 90 S. E. 2d 111, 113.

In the instant case the chancellor heard the evidence and had an opportunity to see and hear all of the witnesses and to place his evaluation upon their character and evidence. These proceedings were lengthy and took place on four separate occasions before the final decree was entered. It is obvious that the chancellor gave careful and mature consideration to this troublesome matter before reaching a decision.

The court listened to Forbes, a man 59 years of age, and followed his immoral conduct from the time he met Mrs. Haney to the time of trial. The testimony portrayed a man twice divorced who attempted a third and bigamous marriage to Mrs. Haney. Other parties interested in the custody of Julia Ann were heard. Mrs. Mossie Forbes, appellant's mother, in her late seventies, as well as her unmarried middle aged daughter, Miss Alice Forbes, sister of the ap-

pellant, testified in the case. The court also heard the evidence of the maternal grandparents, Mr. and Mrs. Sutton, and found them to be fit and proper persons to have custody of these unfortunate children.

In awarding custody of a child the trial court necessarily has a wide measure of discretion, in the exercise of which the paramount and controlling factor is the welfare of the child. *Lawson* v. *Lawson*, 198 Va. 403, 408, 94 S. E. 2d 215, 218, 14 Michie's Jur. § 8, p. 92.

Certainly it is true that the legal rights of the parent should be respected in custody proceedings, they being founded in nature and wisdom, but the welfare of the child is to be regarded more highly than the technical legal rights of the parent. Where the interest of the child demands it, the rights of the father and mother may be disregarded. *Hayes* v. *Strauss*, 151 Va. 136, 144 S. E. 432.

In many instances, as in the case now before us, the decision of the court as to who shall have custody of children is limited by fate. The choices, as in this case, are ofttimes restricted, leaving the chancellor to do the best he can under the circumstances presented. We have said that: "The awarding of the care and custody of children involves a most perplexing question. It is indeed rare when a court can be positive at the time, that its award will prove to be for the best interests of the child, which is the paramount question. The uncertainty involved is the reason for Section 20-107 Code of Va. of 1950 which empowers the court to alter or change the custody of children, viewed in the light of subsequent events. Relief under this Statute remains within the court's jurisdiction throughout the infancy of the child involved and affords a degree of comfort to a court having the heavy responsibility of determining custody." *Andrews* v. *Geyer*, 200 Va. 107, 111, 112, 104 S. E. 2d 747, 750, 751.

We are of the opinion that the determination of the chancellor in this case is correct and should not be disturbed. The decree is therefore

*Affirmed.*