## CIRCUIT COURT OF SHENANDOAH COUNTY

Fitzwater

v.

Shell

February 17, 1983

Case No. Chancery 2031

By JUDGE HENRY H. WHITING

The Court must resolve the issue of custody between a natural mother and the maternal grandparents in this case. Evidence was heard ore tenus on Saturday, December 11, 1982, beginning at shortly after 9:00 AM and ending at 7:25 PM, with an hour off for lunch. By the Court's calculation, twenty-three witnesses were heard for the maternal grandparents and nine for the mother.

All parties agreed that the maternal grandparents had the burden of proof and their evidence was heard first. At the conclusion of their evidence, a motion to strike was made on the ground that the evidence was insufficient as a matter of law to establish that the mother had abandoned the child to the maternal grandparents or that the mother was unfit, and the Court's notes indicate citations of Rocka v. Roanoke County Board of Welfare, 215 Va. 515 (1975), Lawson v. Lawson, 198 Va. 403 (1956), and Taylor v. Taylor, 103 Va. 750 (1905) (not in point, husband-wife dispute over custody of a seven-year old boy).

Rocka was little help because that involves termination of parental rights with entirely different standards of proof required than in this custody dispute. Lawson does involve a contest between the mother of the children and collateral relatives but did not hold the mother entitled to custody as a matter of law, the trial court was merely affirmed in awarding custody to the mother in that contest, Id., at 408. While some of the language in Lawson is helpful, more to the point are cases in which it was decided as a matter of law as in Walker v. Brooks, 203 Va. 417 (1962), and Wilkerson v. Wilkerson, 214 Va. 395 (1973), both to be discussed later. The evidence was extensive and far ranging and will not be discussed in detail. Suffice it to say there was competent evidence which would indicate that the mother was not as attentive a parent as she might have been when both she and this child were younger, leaving the child most of the time in the care of her mother and father. The evidence also shows that the mother was engaged in some criminal activities as a young woman. (Prosecution for some of these activities has only been recent, and the evidence supports the view that at least a substantial part of the prosecution was set afoot by the grandparents in hiring a private detective to procure the necessary evidence for the prosecution. All of this occurred after the controversy over custody arose.) However, the evidence convinces the Court that the mother has matured, acquired a sense of purpose and responsibility. She seems to have established a stable home after her marriage to Mr. Fitzwater and to have been a good mother, concerned for her child, giving him proper care and supervision since she and her husband have had him in their custody following the removal of the child from the maternal grandparents' home in July of 1981.

Although the Fitzwater family does not yet seem to be settled with steady employment prospects, nevertheless the situation is not unusual given their age and the present state of the economy. Adverse aspersions have been cast upon Mrs. Fitzwater's capacity as a parent in recent months by certain of the witnesses,

but the contrary evidence outweighs this and the Court finds that both she and her husband could give her child a proper home and supervision.

It should be pointed out that this is one of those child custody cases involving a choice between a third party and a natural parent who has not lost custody through abandonment or through adversarial legal proceedings. Wilkerson v. Wilkerson, supra, is an analogous case involving a father seeking custody of his child against collateral relatives who had had the custody for some period of time. Wilkerson is somewhat different from this case in that the child was in the third party's home exclusively during the period, and in this case the Court believes that the mother was residing in her parents' home a good deal of the time and was in frequent contact with the child, although the Court does believe that during substantial periods of time the maternal grandparents had the major responsibility for support and supervision of the young child. Although Wilkerson does not cite Walker v. Brooks, supra, in that case a similar contest arose between a natural mother and the paternal grandmother with whom two young children had been previously residing over a substantial period of time and states the rules in this kind of child custody contest:

These rules require that, as between a natural parent and a third party, the rights of the parent are, if at all possible, to be respected, being essential to the peace, order, virtue and happiness of society. Surber v. Bridges, 159 Va. 329, 334, 335 (1932); Judd v. Van Horn, 195 Va. 988, 995, 996 (1954); Lawson v. Lawson, 198 Va. 403, 408 (1956); Jones v. Henson, 202 Va. 738, 744 (1961).

In any such contest, the best interests of the child are paramount and form the lodestar for the guidance of the court in determining the dispute. This is true whether the rights of the parent are sought to be denied because it is claimed that they have been

voluntarily relinquished or because the parent is unfit. In either case, the burden is upon the one seeking to sever the parent's right to show such relinquishment or unfitness by clear, cogent and convincing proof. Merritt v. Swimley, 82 Va. 433, 439, 440 (1886); Sutton v. Menges, 186 Va. 805, 810 (1947); Williams v. Williams, 192 Va. 787, 792 (1951); Phillips v. Kiraly, 200 Va. 345, 351 (1958). Id., at 421.

Both Wilkerson and Walker were rulings as a matter of law reversing trial court rulings awarding custody to parties other than the natural parents.

The grandparents cite the following three cases in support of their contention that this Court should award custody to the maternal grandparents. Burton v. Russell, 190 Va. 339 (1950), is distinguishable on its facts. There the father had only lived with the child for six weeks in the seven years of its life; he had abandoned both the child and its mother very early in the child's life and except for a period of time when his Army allotment provided for support of the child he did not support the child during most of its life. So also in Cover v. Widener, 126 Va. 643, 647 (1919), the father in that case had virtually no contact with his thirteen-year old daughter nor was there any evidence that he had "reformed his evil way." Unlike Burton and Cover, this mother has had almost constant contact with her child and has not surrendered or abandoned her parental rights.

In Forbes v. Haney, 204 Va. 712 (1963), a trial court was sustained in denying the father custody of an illegitimate child and vesting it in the maternal grandparents. The fifty-nine year old father's previous conduct indicated to the trial court that he was disqualified as custodian of the child and there was no evidence that he had reformed. That, coupled with the child's expressed preference for the grandparents, is contrasted with this case in which the mother has been shown to have matured and given up many of her childish, impulsive and on occasion illegal ways.

In this case the Court not only does not believe that the maternal grandparents have carried the burden of proof of showing the mother is an unfit parent but finds as a fact that the best interests of this child would be served by vesting his custody in his mother and not in the maternal grandparents. The Court recognizes the deep and abiding affection these grandparents have for their grandchild and joins with the guardian ad litem in his feeling that these grandparents deserve great credit for the nurture they provided this young child at a time when his mother was unwilling or unable to fulfill many of his needs. Nevertheless, apart from the mother's present fitness the evidence persuades the Court that not only the age and present state of health of these grandparents but also their personalities make it inadvisable that they should be the custodians of this young boy.

## VISITATION RIGHTS OF THE GRANDPARENTS

The maternal grandparents asked for visitation rights under Virginia Code, § 20-107.2, recently enacted in apparent response to the case of West v. King, 220 Va. 754 (1980). The Court does not believe it can or should grand this relief for the following reasons:

(1) The statute was directed only to divorce suits and does not refer to custody disputes between parents and grandparents. While a liberal construction might be urged for this statute to accomplish a worthwhile purpose where grandparents should be given visitation rights, the language of the Supreme Court in the West case militates against this:

As between a parent who has been awarded custody of a child, on the one hand, and, on the other, third persons, including grandparents, the rights of the custodial parent are paramount; the parent has the authority to control the child and to determine with whom it visits. If these rights are to be derogated by a grant of jurisdiction purport-

ing to permit the award of grandparental visitation privileges despite the custodial parent's objection, then the grant should be specific, reflecting the legislative intent in unambiguous language. Id., at 756.

(2) Even if the statute authorized the Court to grant the request, the relations are such between the mother and her parents as to cause an unnecessary strain upon the child in being pulled between the two households. Unfortunately the conduct of the grandparents is such as to convince the Court that they would attempt to undermine the mother's authority and to alienate the child's affections and could only confuse the child in his loyalties. This is indeed unfortunate given the care and attention these grandparents gave the child in his early life, but in their zeal to exclude the mother they have demonstrated their unfitness to insist upon a Court-ordered right of visitation. If the mother later decides to permit the visitations and the grandparents give no evidence of alienating the child or confusing him, both the guardian ad litem and the Court believe it would be helpful to the child but this can only be done as a matter of grace from the mother, who should be the sole custodian of the child at this time.

The Court desires to record its appreciation to the guardian ad litem for his diligent and conscientious services and to thank him for the letter expressing his views, that being of material assistance in resolving the issue.

Counsel for the mother will prepare an appropriate decree reflecting the Court's findings and saving all the maternal grandparents' objections, which should also state the particular grounds for the objections. Mr. Gunter should furnish them within fourteen days from the date of this letter.