## CIRCUIT COURT OF FREDERICK COUNTY

Michael G. Finnerty

v.

Kathryn A. Finnerty

November 15, 1982

Case No. (Chancery) 6701

By JUDGE ROBERT K. WOLTZ

A draft decree was submitted for entry in this case with provision for incorporation in it of a separation agreement and addendum. Certain provisions of the addendum cannot be incorporated in the decree.

This suit was commenced October 16, 1981, on the ground of having lived separate and apart for more than one year. § 20-91(9)(a). Filed with the bill of complaint was a post-separation agreement of August 13, 1980, settling between the parties matters of property, child custody and support, the bill praying that the agreement be affirmed, ratified and incorporated in the decree of divorce pursuant to § 20-109.1.

Respondent filed answer and cross-bill November 2, 1981, the answer denying that the parties "by mutual consent" entered into the separation agreement. The cross-bill alleges that the separation agreement was executed by her as a result of being induced to do so by false representations of the complainant and that the agreement was "contrary to public policy." On motion of the respondent, consent order of September 16, 1982, was entered dismissing her cross-bill "on the ground that the parties hereto have resolved the differences between them by the Addendum dated May 30, 1982, to the Settlement Agreement

of August 13, 1980, both of which are prayed to be incorporated in the final decree of this cause."

Both the original agreement and the addendum thereto were filed with the depositions, at which the respondent made no appearance. The original agreement, Paragraph 1, with several subdivisions, makes provision for custody of the children in the respondent, with various visitation rights in the complainant and for support and other financial arrangements for the benefit of the children. The addendum adds to the custody provision in the original agreement the following:

> Both parties agree that the party having custody of such children will raise the children in the Roman Catholic religion, and that failure to do so will be grounds for termination of custody in such custodial parent. Wife agrees to make all effort to have such children attend Roman Catholic Parochial School, if available, and Husband agreed to pay Fifty (50%) Percent of tuition costs for such attendance to a maximum of One Thousand Dollars ($1,000.00) per child per year.

The addendum to the original agreement has four other provisions altering the original agreement. Presumably each of them, including the quoted one, was in part effective to resolve disputes between the parties resulting in the respondent withdrawing her cross-bill and in the suit proceeding thereafter as though uncontested.

Section 20-109.1 as it presently exists provides in part as follows:

> Any court *may* affirm, ratify, and incorporate by reference in its decree dissolving a marriage . . . any *valid* agreement between the parties, or provisions thereof, concerning the care, custody and maintenance of their minor children, or establishing or imposing any other condition or consideration, monetary or nonmonetary. Where the court affirms, ratifies and incorporates by reference in its decree such agreement or provision thereof, it shall be deemed for all

purposes *to be a term of the decree*, and *enforceable* in the same manner as any provision of such decree . . . . (Emphasis added.)

With respect to the case at bar, the section has these salient features: First, it is discretionary with the Court whether or not to affirm, ratify and incorporate by reference; second, there is a clear limitation upon such discretion in that only valid agreements may be so treated; third, the whole agreement does not have to be treated so, and such treatment can be limited to a provision or provisions thereof; fourth, when so treated, the agreement or provision becomes a part of the decree; and, finally, being a term of the decree, it becomes enforceable as any other provision of it, even to the extent of invoking the jurisdiction of the Court to impose the extreme remedy and sanction of contempt against a party in violation of any provision so incorporated.

For this Court to ratify and affirm the quoted provision of the addendum to the original agreement and incorporate it in its decree would enlist the sanction of government in support of the provision. It would bring the full force and power of government to bear upon the parties and their children respecting this provision, even to the extent of punitive action against the parties, including fine and imprisonment for violation of its terms, which are wholly religious in nature. To do so would be inimical both to the purposes and uses for which government was instituted in this Commonwealth and to the freedom of its citizens.

Article I, § 16, of the Constitution of Virginia in part provides as follows:

That religion or the duty which we owe to our Creator, and the manner of discharging it, can be directed only by reason and conviction, not by force or violence; and, therefore, all men are equally entitled to the free exercise of religion, according to the dictates of conscience; and that it is the mutual duty of all to practice Christian forbearance, love, and

charity toward each other.[1] No man shall be compelled to frequent or support any religious worship, place, or ministry whatsoever, nor shall be enforced, restrained, molested, or burdened in his body or goods, nor shall otherwise suffer on account of his religious opinion or belief, but all men shall be free to profess and by argument to maintain their opinions in matters of religion, and the same shall in no wise diminish, enlarge, or affect their civil capacities.[2]

In *Perry v. Commonwealth*, 44 Va. (3 Gratt.) 632 (1846), complaint was made by the appellant that a witness who believed in God but not in a future state of reward or punishment was allowed to be sworn and to testify. The Court stated that by constitutional provision, all men were "free to profess and by argument to maintain" their religious opinions, that religious opinion should not affect one's "civil capacities" and held that the witness

---

[1] This provision constitutes the Declaration of Religious Freedom as a part of the Virginia Bill of Rights adopted June 12, 1776, over fifteen and one-half years before ratification December 15, 1791, of Amendment I of the United States Constitution on the same subject.

[2] This sentence is the operative portion of Thomas Jefferson's famous Statute of Religious Freedom adopted December 16, 1785, well before ratification of Amendment I of the United States Constitution. Not only has this portion of the statute been incorporated into our Constitution, but the complete statute has continued as a law of the Commonwealth since its adoption nearly two hundred years ago and is now found in Section 57-1, Code 1950.

At the time of drafting the United States Constitution, in theory, the new central government was to be one of limited powers. Thus, in theory, it did not need the restrictions on its power insisted upon and embodied in the first ten Amendments constituting the Federal Bill of Rights. In that Constitution unamended, there does appear in the last clause of Article VI a restriction involving religion on the central government, similar to the last clause of the operative portion of the Virginia Statute of Religious Freedom, providing as follows: "but no religious test shall ever be required as a qualification to any office or public trust under the United States."

was properly allowed to testify.[3] The Court reasoned that to prevent the witness from testifying would be a legally imposed incapacity based on one's religious belief and so constitutionally inadmissible.

One hundred years later in *Jones v. Commonwealth*, 183 Va. 335 (1946), two boys were found to be delinquent by a Juvenile and Domestic Relations Court. As a part of their punishment, they were placed on probation with numerous conditions attached, one being that each "attend Sunday School and Church each Sunday thereafter for a period of one year, and present satisfactory evidence of such attendance at the conclusion of each month to the Probation Officer." On appeal to the court of record, the same findings and judgments were made.

On appeal from its judgment, the trial court was reversed as to its finding of delinquency. Nevertheless, the Court went on to consider the probation condition of Sunday school and church attendance. The Court found that making such a requirement flew in the face of the Statute of Religious Freedom, then also embodied in the Virginia Constitution, and the First Amendment of the United States Constitution, stating at page 344: "No civil authority has the right to require anyone to accept or reject any religious belief or to contribute any support thereto."[4]

If the parties *inter se* wish to agree that the one having custody will raise the children in a certain faith, the Courts, again on grounds of religious freedom, could generally not interfere. If the wife wishes to bind herself

---

[3] The only error the Court found in the actions of the trial court was to allow the witness to be voir dired on his religious beliefs in the first place.

[4] Civil authority in the form of legislative action in the field of religious freedom has also been assessed against the requirements and strictures of the Virginia Constitution. The Sunday closing law has been held free of constitutional infirmity on the basis the law was an exercise of the police power rather than a religious enactment. Mandell v. Haddon, 202 Va. 979 (1961); Francisco v. Commonwealth, 180 Va. 371 (1942); and Pirkey Bros. v. Commonwealth, 134 Va. 713 (1922). In the field of public funds and payment for higher education in sectarian schools, see Miller v. Ayres, 213 Va. 251 (1972), and Almond v. Day, 197 Va. 419 (1955).

to have the children if at all possible attend a school operated and controlled by a certain religious denomination, she is free to do so. If the husband likewise wishes to agree to pay a portion of the tuition for attendance at that type of school, an important part of the curriculum and philosophy being presumptively sectarian, then he too is free to do so. But neither is free to have the State through its Courts give approval to such agreements and force the parties to abide thereby upon sanction extending even so far as pain of fine, imprisonment, or both for contempt.

In *Lundeen v. Struminger*, 209 Va. 548 (1969), the divorce decree contained a provision requiring that the children of the parties be reared in a certain faith and attend the Sunday school and religious services of that faith. Citing the *Jones* case, the Court summarily struck those provisions of the decree as violative of our constitutional mandate that "no man shall be compelled to frequent or support any religious worship, place, or ministry . . ." The obvious similarities in that case and this one require holding here of similar import.

Only rarely should the State intrude upon the parent-child relation or interfere with the parental prerogative of rearing children, including their religious instruction. Neither should the State intrude -- even at the request and upon the agreement of the parents -- to enjoin upon them or their children any course of conduct related to religious support, belief or training. "No State has more jealously guarded and preserved the question of religious belief and religious worship as questions between each individual man and his Maker than Virginia." *Jones, supra,* at page 343.

There is another important reason in addition to constitutional infirmity why the agreement on child custody contained in the addendum must fail. One provision is that failure of the parent having custody to raise the children in the Roman Catholic religion "will be grounds for termination of custody in such custodial parent." The provision not only has the potential for ousting the Court of its jurisdiction to determine custody of children but, in addition, violates the first principle in the determination of child custody. This principle finds statutory expression in § 31-15:

> [T]he courts . . . in awarding the custody of the child to either parent or to some other person shall give primary consideration to the welfare of the child . . .

The principle is also embodied in judicial decisions in the leading case of *Mullen v. Mullen*, 188 Va. 259, 269 (1948):

> [T]he welfare of the infant is the primary, paramount, and controlling consideration of the court in all controversies between parents over the custody of their minor children. All other matters are subordinate.

*Mullen* is also authority for a second principle violated by this particular custody provision, namely, that the rights of neither parent are superior to the rights of the child. The rights of parents are to be respected, but the welfare of the child is "regarded more highly than the technical legal rights of the parents." *Forbes v. Haney*, 204 Va. 712 (1963).

The religious preferences of the parents or either of them in this contractually expressed particular cannot be embodied as a nearly self-executing, custody-terminating decree provision. To do so would create not only an auto-da-fe against the non-complying parent but also a means of immolation of the Court's own necessary continuing control over child custody and an instrument to destroy basic civil tenets on that subject.

For the infirmities stated above, the offending Paragraph 4 of the addendum is not a valid provision in contemplation of § 20-109.1. *Sua sponte* the Court finds that it cannot exercise its discretion to affirm, ratify, and incorporate that provision in its divorce decree so as to make it a term thereof, enforceable as other decretal provisions. The remainder of the agreement appears to

be valid and could be incorporated into the decree.[5]

[5] In McIntire v. McIntire, Circuit Court of Frederick County, Ended Docket No. 11697, there was a separation agreement providing for certain religious training of the child of the parties. By letter of June 10, 1982, the Court raised serious questions as to the validity of the provision and in the absence of invited memoranda of counsel or formal written opinion suggested its omission from ratification, etc., which suggestion was followed by counsel.